# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIANA LYNN NICHOLS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　Defendant. | Case No.  1:23-cv-01559-SAB<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT; AND DIRECTING THE CLERK OF THE COURT TO ENTER JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITY AND CLOSE THIS ACTION<br><br>(ECF Nos. 14, 18) |

## I.

## INTRODUCTION

Diana Lynn Nichols ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability benefits pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge and this action has been assigned to Magistrate Judge Stanley A. Boone for all purposes.  (See ECF Nos. 5, 6, 7.)

Plaintiff requests the decision of the Commissioner be vacated and the case be remanded for further proceedings, arguing the residual functional capacity ("RFC") assessment is not supported by substantial evidence because the Administrative Law Judge ("the ALJ") considered imaging of her shoulder and included additional reaching limitations, and the RFC does not include limitations for her evidence submitted to the Appeals Council.

For the reasons explained herein, Plaintiff's motion for summary judgment shall be denied and the Commissioner's cross-motion for summary judgment shall be granted.

## II.

## BACKGROUND

### A.      Procedural History

Plaintiff protectively filed an application for a period of disability and disability insurance benefits on July 20, 2020.  (AR 308.)  Plaintiff's application was initially denied on September 3, 2020, and denied upon reconsideration on November 29, 2021.  (AR 334-38, 341-45.)  Plaintiff requested and received a hearing before ALJ John W. Rolph.  Plaintiff appeared for a telephonic hearing on September 1, 2022.  (AR 253-290.)  On October 31, 2022, the ALJ issued a decision finding that Plaintiff was not disabled.  (AR 26-43.)  On September 1, 2023, the Appeals Council denied Plaintiff's request for review.  (AR 1-3.)

### B.      The ALJ's Findings of Fact and Conclusions of Law

The ALJ made the following findings of fact and conclusions of law as of the date of the decision, October 31, 2023:

1.  Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2024.

2.  Plaintiff has not engaged in substantial gainful activity since August 31, 2019, the alleged onset date.

3.  Plaintiff has the following severe impairments: 1) lumbar, cervical, and thoracic spine problems (degenerative disc disease/spondylosis/facet joint syndrome/scoliosis/ sacroiliac disorder) with pain/cervicalgia/radiculopathy; 2) bilateral hand problems with numbness/dysesthesia/tremors; 3) right shoulder problems (mild acromioclavicular joint

arthritis) with pain/weakness; 4) multiple joint problems (degenerative joint disease/polyarthritis/bursitis) with pain; and 5) obesity.

4. Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.

5. Plaintiff has the residual functional capacity to perform light work as defined in 20 CFR § 404.1567(b) except she is able to lift, carry, push, and pull up to 20 pounds occasionally and 10 pounds frequently. Plaintiff can stand and/or walk four hours in an eight-hour day. She can sit six hours in an eight-hour day. Plaintiff requires a sit/stand option at 30 to 45-minute intervals for 3 to 5 minutes at a time, during which periods Plaintiff may remain on task. With the upper extremities, Plaintiff may frequently reach overhead, push, pull, handle, and finger. She may never climb ladders, ropes, or scaffolds. Plaintiff may occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl. With the lower extremities, Plaintiff may occasionally push, pull, and engage in foot pedal operations. She may frequently engage in work activity requiring flexion, extension, and rotation of the neck. Plaintiff must avoid more than occasional exposure to extreme cold and vibration, and hazards such as dangerous moving machinery and unsecured heights.

6. Plaintiff is capable of performing past relevant work in a composite position with duties of a "sales attendant" (Dictionary of Occupational Titles (DOT) 299.677-010) and a "communications attendant" (DOT 235.662-022). This work does not require the performance of work-related activities precluded by Plaintiff's RFC.

7. Plaintiff has not been under a disability, as defined in the Social Security Act, from August 31, 2019, through the date of this decision.

(AR 31-43.)

## C.   Relevant Medical Record

Plaintiff had an MRI of the cervical spine on June 16, 2018, which showed significant degenerative spondylosis with multilevel disc desiccation, disc space narrowing seen and mild to moderate posterior disc bulges and osteophyte noted at all cervical levels. (AR 636-37.)

Plaintiff attended physical therapy beginning March 13, 2019.  (AR 745.)  On March 15, 2019, Plaintiff reported very little pain for 3-4 hours after treatment, but the pain slowly returned. She reported it had been many years since she had felt that good.  (AR 743.)  The records throughout March of 2019, note that Plaintiff is getting good results, but her pain reduction progress is slow because her condition is chronic.  (AR 735-42.)

On May 1, 2019, she reported that she was not feeling pain so much, but her back was very stiff.  (AR 736.)  Her cervical spine was painful on movement, and she had degeneration of lumbosacral intervertebral disc, intractable low back pain, and cervical disc degeneration of the mid-cervical region.  (AR 727.)   On May 14, 2019, Plaintiff returned to physical therapy stating she had been very sick, but the good news was that her pain had not returned.  (AR 731.)  On May 21, 2019, Plaintiff reported she was very pleased with her progress, and she was trying to regain strength and endurance after being very ill for over 2 weeks.  Her neck and back pain were now ranging from 0-4 out of 10 and most of the time were 0.  She only needed her back brace at work instead of fulltime.  Plaintiff's posture was within normal limits.  Core and upper back strength had increased from 3/5 to 5/5 and she no longer had upper extremity paresthesia.  Trigger points along the spine had been 80% resolved but she was still mildly unstable at AL1 and S3.  Her gait had improved from slow and guarded to within normal limits and gait endurance has increased from 100 feet to 1 mile.  Trunk range of motion had improved from 70% to within normal limits.  (AR 730.)

On August 22, 2019, Plaintiff was seen by Dr. Garcia-Diaz complaining of neck, mid-back and low back pain.  (AR 631.)  Examination notes an antalgic gait, tenderness to the palpation and muscle spasms of the cervical, thoracic spine, and lumbosacral spine.  There was a positive bilateral SI joint stress test.  Swelling was present and abnormal in the right hand.  Bilateral hips were positive to tenderness on palpation over the greater trochanter.  Upper extremity color was cyanotic and there was distal finger ischemia.  There was no pulse in the upper extremity right index finger, it was ischemic, with no capillary refill and no sensation.  (AR 632.)  Neurological examination showed a sensory deficit in the left upper extremity.  (AR 633.)  Examination was otherwise unremarkable. (AR 632-33.) Plaintiff was placed on total temporary disability until November 22,

1  2019.  (AR 635.)

2       Plaintiff was seen on August 23, 2019, to discuss her depression medications.  (AR 584.)

3  She reported that her medications were not helping her depression and anxiety anymore.  Physical

4  examination notes that she had tenderness to palpation in the lower back area and limited range of

5  motion but was otherwise unremarkable.  (AR 587.)

6       On October 4, 2019, Plaintiff had bilateral T8, T9, T10, T11 thoracic medial branch blocks.

7  (AR 698-99.)

8       Plaintiff was seen by Dr. Garcia-Diaz on October 11, 2019, complaining of frequent neck,

9  mid-back, low back, and bilateral buttock pain.  (AR 961.)  Examination notes an antalgic gait.

10  There is tenderness to palpation and muscle spasm in the cervical, thoracic, and lumbosacral spine.

11  There were positive bilateral SI joint tests.  Swelling was present in the right hand and bilateral hip

12  examination showed tenderness to palpation over the greater trochanter.  Upper extremity color was

13  cyanotic and there was distal finger ischemia.  There was no pulse in the upper extremity right index

14  finger, it was ischemic, with no capillary refill and no sensation and sensory deficit of the upper left

15  extremity.  Otherwise, examination is unremarkable.  (AR 962.)

16       On October 18, 2019, Plaintiff was seen for a weight check.  (AR 579.)  Examination was

17  unremarkable.  (AR 583.)

18       Plaintiff was seen by Dr. Thondapu on October 21, 2019, complaining of neck and bilateral

19  shoulder and hand pain, worse on the right for the last several years.  She reported constant pain in

20  the mid inter scapular, right shoulder, right upper arm area, and decreased strength in the upper

21  extremities.  (AR 615.)  She was taking BuSpar, Zoloft, tramadol and Tylenol for arthritis.  (AR

22  615.)  She reported working at a general store and needs to be on her feet all the time lifting and

23  moving things around.  (AR 616.)  On examination, finger extension and grip strength are

24  considerably decreased on both sides and there is generalized and diffuse tenderness in the upper

25  neck and sub occipital area.  There was minimal pain and paresthesia over the lumbar spine, buttock,

26  and back of the right thigh.  Hip abduction was limited to 15-20 degrees.  Patrick-Fabere test was

27  positive, Goldthwaite's test reproduced the paresthesia over the right buttock and back of the right

28  thigh.  A slight limp was observed with gait, and she was leaning to the right.  Neck range of motion

was intact, but with limited range to flexion, extension, lateral and axial rotation.  Examination was otherwise unremarkable.  (AR 617.)

Plaintiff was seen on October 28, 2019, complaining of dropping things, being shaky, and weakness for the past year that was getting worse.  (AR 574, 578.)  Examination was unremarkable.  (AR 578.)  On October 29, 2019, Plaintiff had a cervical epidural steroid injection.  (AR 767-68.)

On November 13, 2019, Plaintiff had an abdominal ultrasound that showed hepatic steatosis and was otherwise an unremarkable abdominal ultrasound.  (AR 658.)

On November 18, 2019, Dr. Garcia-Diaz performed a bilateral radio frequency ablation at T8, T9, T10, and T11.  (AR 677-78.)

Plaintiff was seen on November 27, 2019, for a one month follow reporting she lost nine pounds, but her tremor was getting worse, and she requested a bone scan.  (AR 572.)  Physical examination was unremarkable, other than a resting tremor noted on neurologic exam.  (AR 572-73.)

On December 4, 2019, Plaintiff had a FRAX assessment that showed the probability of a hip fracture is .3% within the next ten years and fracture risk for the left neck femur is moderate.  (AR 710-13.)

On December 12, 2019, Plaintiff presented with tremor and dysesthesias.  She reported that since she received a steroid injection of her thoracic spine in 2019, she had worsening tremor in her hands, muscle spasms, tingling sensation and numbness in both arms and right leg.   Her gait was noted to be slow and painful due to her lower back pain and there was a postural and kinetic tremor noted in the upper extremities although it was fast irregular and short range, there was possible decreased sensation distally.  Otherwise, examination was unremarkable.  (AR 510.)  It was noted that the examination was remarkable only for gait difficulties due to lower back pain and tremors in upper extremities symmetric irregular short range.  (AR 511.)  Plaintiff had a normal chest x-ray.  (AR 506-07.)

On December 23, 2019, Plaintiff had an MRI of the brain which found multiple small, ovoid, smoothly marginated parenchymal nodules within the frontal cerebral hemispheres bilaterally without evidence of associated edema to suggest metastatic disease.  This distribution suggested a

possible embolic shower in the past.  An atypical multifocal vasculitis is also within the differential.  MS is not strongly considered given the appearance of the nodules and their distribution.  There were no other significant findings.  (AR 506.)

Plaintiff was seen on December 24, 2019, for irritable bowel syndrome issues and requested a refill of her medication.  (AR 564, 567.)  Physical examination was unremarkable.  (AR 567-68.)

Plaintiff was seen on January 22, 2020, complaining of tremor and dysesthesias (AR 507.)  Physical examination noted gait was slow and painful due to her lower back pain and there was a postural and kinetic tremor noted in the upper extremities although it was fast irregular and short range, there was possible decreased sensation distally.  Otherwise, examination was unremarkable.  It was noted that the examination was remarkable only for gait difficulties due to lower back pain and tremors in upper extremities symmetric irregular short range.  (AR 508.)

On February 18, 2020, Plaintiff was seen for a medication refill and MRI results.  She reported sleep disturbances and feeling unsafe in her relationship and denied any other symptoms.  (AR 562-63.)  Examination notes that she has poor insight, mental state was confused, anxious, agitated and with abnormal affect.  Musculoskeletal examination notes abnormal hypotonicity and poor tone but is otherwise unremarkable.  (AR 563.)

A February 20, 2020, physical therapy discharge report states that Plaintiff no longer moves in a slow guarded manner and goals have been closely approximated.  Plaintiff did not lose weight as they had hoped, but she continues to try.  (AR 691.)

On May 6, 2020, Plaintiff was seen for a medication refill.  She requested pain medication due to chronic back pain, stating she was having back pain once a day and had an ablation, but it seemed like it was not helping, her anxiety was getting worse, and her medications were not helping much.  Plaintiff was noted to be healthy appearing and obese, in no acute distress, and ambulating normally.  (AR 557.)  Examination was unremarkable other than limited range of motion and tenderness to palpation to the lower back.  (AR 558.)

Plaintiff had an MRI of the lumbar spine on May 8, 2020, which showed multilevel degenerative discopathy and facet arthropathy, with no evidence of disc protrusion or significant encroachment on the spinal canal or neural foramina; and limbus vertebra configuration of the

anterior superior margins of L4 and L2 representing chronic change.  (AR 672, 685.)

On May 14, 2020, Plaintiff was seen by Dr. Garcia Diaz complaining of frequent mid-back and low back pain.  (AR 950.)  Examination notes an antalgic gait.  There was tenderness to palpation and muscle spasm in the cervical, thoracic, and lumbosacral spine.  Swelling was present in the right hand and bilateral hip examination showed tenderness to palpation over the greater trochanter.  Upper extremity color was cyanotic and there was distal finger ischemia.  There was no pulse in the upper extremity right index finger, it was ischemic, with no capillary refill and no sensation and sensory deficit of the upper left extremity.  (AR 951.)  Otherwise, examination is unremarkable.  (AR 951.)

On June 15, 2020, Plaintiff had a telehealth appointment.  She requested a referral for an MRI of the brain and reported feeling fatigue.  No examination is noted.  (AR 553.)

On June 19, 2020, Plaintiff had a medial branch block of the bilateral L5 lumbar and sacral S1.  (AR 696-97.)

Plaintiff was seen for a virtual appointment on June 29, 2020, complaining of nausea and vomiting, and body aches for three days, continuing to feel fatigue and weakness.  (AR 548.)  No physical examination is noted.  (AR 549.)

Plaintiff saw Dr. Garcia-Diaz on July 9, 2020, complaining of mid-back and low back pain. (AR 940.)  Physical examination notes an antalgic gait.  Muscle spasm was present in the cervical spine. There was tenderness to palpation in the thoracic spine and muscle spasm and tenderness to palpation in the lumbosacral spine.  (AR 941.)  Otherwise, examination was unremarkable.  (AR 942.)

On July 13, 2020, Plaintiff was seen virtually requesting labs.  She stated her spine doctor wanted her to get screened for rheumatoid arthritis and she had been having chills on and off for 1 month.  No examination is noted.  (AR 544.)

Plaintiff had a virtual appointment for lab results and a medication refill on July 22, 2020. (AR 536.)  She reported doing well and no examination is noted.  (AR 540.)

On August 20, 2020, Plaintiff had an MRI of the brain which showed a mild degree of nonspecific white matter changes of small vessel ischemia with otherwise negative MRI exam of

1    the brain.  (AR 642, 674.)

2        Plaintiff had bilateral T8, T9, T10, T11 radio frequency ablation on August 31, 2020.  (AR

3    702-03.)

4        On September 8, 2020, Plaintiff was seen by Dr. Garcia-Diaz complaining of frequent mid-

5    back and low back pain.  (AR 929.)  Examination noted an antalgic gait.  Muscle spasm was present

6    in the cervical spine. There was tenderness to palpation in the thoracic spine and muscle spasm and

7    tenderness to palpation in the lumbosacral spine.  (AR 930.)  Otherwise, examination was

8    unremarkable.  (AR 930-31.)

9        On October 2, 2020, Plaintiff had bilateral L5 and S1 radio frequency ablation.  (AR 704-

10    05.)

11        On October 10, 2020, Plaintiff was seen for results of an MRI of the brain.  (AR 531.)  She

12    was complaining of hot flashes, fatigue, and nausea and vomiting for four days.  She stated she

13    smoked marijuana because it helped with her menopause symptoms but had not been able to afford

14    marijuana because her temporary disability ran out.  She was noted to be ambulating normally.

15    Examination was unremarkable.  (AR 535.)

16        Plaintiff had an MRI of the cervical spine on December 22, 2020, due to neck pain which

17    showed straightening of the spine possibly related to muscle spasm/strain; multilevel degenerative

18    disc disease without significant spinal canal stenosis and neural foraminal narrowing; and normal

19    spinal cord signal intensity.  (AR 596.)

20        On December 29, 2020, Plaintiff was seen by Dr. Garcia-Diaz complaining of neck and

21    mid-back pain.  (AR 920.)  Physical examination noted tenderness to palpation of the cervical,

22    thoracic, and lumbosacral spine with muscle spasm to the lumbosacral spine but was otherwise

23    unremarkable.  (AR 921.)

24        On January 4, 2021, Plaintiff had bilateral T8, T9, T10, T11 radio frequency ablation.  (AR

25    700-01.)

26        Plaintiff was seen by Dr. Garcia-Diaz on January 12, 2021, complaining of frequent pain in

27    her neck, diffuse thoracic, and bilateral shoulders.  (AR 598.)  On examination of the lumbosacral

28    spine muscle spasms were present with tenderness to palpation of the bilateral posterior superior

iliac spine.  Examination was otherwise unremarkable.  (AR 599.)  The record notes that the December 22, 2020, cervical spine findings; April 12, 2020, MRI of the lumbosacral spine; December 23, 2019, MRI brain study; and December 2, 2019, lumbosacral spine x-ray are consistent with a skeletally mature individual.  (AR 600.)

Plaintiff had a virtual appointment with Dr. Thondapu on March 2, 2021, for neck and bilateral shoulder and hand pain, worse on the right for the last several years.  She had been seen in October 2019 and had a cervical injection with significant pain relief until recently.  She had also received multiple low back ablations, the most recent being on January 4, 2021.  She was complaining of pain in the mid inter scapular area, right shoulder and right upper arm area, which was achy, with moderate to mild burning sensation.  She also reported some numbness and weakness.  (AR 590.)  She was working at a general store needing to be on her feet all the time, lifting and moving things around.   She was taking BuSpar, Zoloft, tramadol, and Tylenol for arthritis and Flexeril.  No physical examination was conducted.  (AR 591.)  Treatment options were discussed, and Plaintiff opted to have a cervical epidural injection.  (AR 592.)  On March 9, 2021, Plaintiff had a cervical epidural steroid injection.  (AR 694-95.)

On April 30, 2021, Plaintiff saw Dr. Garcia-Diaz complaining of neck, bilateral shoulder, and mid-back pain.  (AR 910.)  Physical examination noted tenderness to palpation of the cervical and thoracic spine but was otherwise unremarkable.  (AR 911.)

On May 17, 2021, Plaintiff had a bilateral T8, T9, T10, T11 radio frequency ablation.  (AR 839-40.)

On May 27, 2021, Plaintiff was seen by Dr. Garcia-Diaz complaining of pain, but reporting pain relief of 70% with the May 17, 2021, injection.  (AR 867.)  Physical examination noted tenderness to palpation of the cervical, thoracic, and lumbosacral spine, but was otherwise unremarkable.  (AR 868.)

On June 18, 2021, Plaintiff had a bilateral L5 and S1 radio frequency ablation.  (AR 841, 843.)

On June 29, 2021, Plaintiff appeared for a follow-up with Dr. Garcia-Diaz complaining of diffuse posterior neck and right shoulder pain.  (AR 851.)  Physical examination was unremarkable

1   other than tenderness to palpation of the cervical, thoracic and lumbosacral spine and bilateral

2   positive Patrick sign for the elicitation of ipsilateral low back pain.  (AR 852-53.)

3       On July 7, 2021, Plaintiff presented to the emergency room complaining of facial numbness

4   on the right side since the afternoon.  Physical examination was unremarkable other than some

5   right-side paresthesia.  (AR 806-07.)  Plaintiff had an MRI of the brain that showed no abnormalities

6   other than the presence of a small number of small focal hyperintensities involving the subcortical

7   white matter consistent with mild microvascular angiopathy.  (AR 803.)  She also had a CT of the

8   head that showed no midline shift, mass, or acute hemorrhage.  (AR 804.)  She was diagnosed with

9   an atypical migraine.  (AR 812.)

10      Plaintiff had a comprehensive internal medicine evaluation by Dr. Wagner on August 3,

11  2021.  (AR 770-74.)  Plaintiff's chief complaints were neck pain, thoracolumbar back pain, and

12  hand numbness.  (AR 770.)  Plaintiff reported that she lives in her car, cooks, cleans, drives, shops,

13  and performs her activities of daily living without assistance.  She does some walking and enjoys

14  swimming for exercise.  She was taking Zoloft and BuSpar.  She reported having a history of right

15  shoulder surgery, but her shoulder was doing well.  Dr. Wagner noted that Plaintiff was easily able

16  to get out of the chair and walk at a normal rate back to the examination room without assistance.

17  She sat comfortably and could easily get on and off the examination table and could easily bend at

18  the waist to take off her shoes and socks and put them back on, demonstrating good dexterity and

19  flexibility.  She could easily oppose fingertips to thumb tips, had positive Tinel's on the right but

20  not left wrist and negative Phalen's bilaterally.  (AR 771.)  Examination was unremarkable other

21  than being too unstable to walk on her toes and heels and some minimal wavering on Romberg.

22  (AR 771-73.)  Dr. Wagner diagnosed Plaintiff with neck pain, but noted she maintains good range

23  of motion in the neck which appears most consistent with occasional musculoligamentous strain,

24  thoracolumbar pain that occurs most consistent with musculoligamentous strain, and hand

25  numbness that appears consistent with mild early carpal tunnel.  (AR 772-73.)  He opined that

26  Plaintiff could stand and walk up to 6 hours with normal breaks; had no limitations sitting with

27  normal breaks; could lift and carry 50 pounds occasionally and 25 pounds frequently; postural

28  activities could be performed frequently; and could perform frequent working overhead with the

1  arms and had no other manipulative limitations.  (AR 774.)

2      On August 25, 2021, Dr. Acinas, an agency physician, reviewed the record and found that

3  Plaintiff could occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds; could

4  stand and/or walk about 6 hours and could sit for 6 hours in an 8-hour workday; could frequently

5  climb ramps/stairs, ladders/ropes/scaffolds, balance, stoop, kneel, crouch, and crawl.  (AR 302-04.)

6  She was unlimited in reaching in all directions and feeling but was limited to frequent handling and

7  fingering with the left upper extremity due to positive Tinel's.  (AR 304.)  Dr. Acinas recommended

8  a light RFC with frequent left upper extremity handling and fingering and frequent postural

9  limitations finding that the medium RFC opined by the consultative examiner may be more than

10  Plaintiff can perform.  (AR 305.)

11      On August 27, 2021, Plaintiff saw Dr. Garcia-Diaz complaining of neck, bilateral shoulder,

12  and midback pain.  (AR 856.)  Physical examination notes tenderness to palpation of the cervical,

13  thoracic and lumbosacral spine and Patrick sign bilaterally was positive for ipsilateral low back

14  pain, otherwise examination was unremarkable.  (AR 857- 58.)

15      Plaintiff saw Dr. Thondapu on September 14, 2021, and had a cervical epidural steroid

16  injection.  (AR 897-98.)

17      On November 6, 2021, Plaintiff had an x-ray of her right shoulder due to shoulder pain.

18  Impression shows no acute osseous findings and early acromioclavicular joint osteoarthritis.  (AR

19  973.)

20      On reconsideration, Dr. Bobba reviewed the record on November 18, 2021.  He concurred

21  with the opinion of Dr. Acinas, other than finding that Plaintiff was limited to occasional stooping

22  and crawling and should be limited to frequent overhead reaching on the left and right.  (AR 321-

23  24.)

24      On July 13, 2022, Plaintiff had an MRI of her cervical spine due to neck pain.  Impression

25  showed minimal degenerative discopathy at C5-C6 and C6-C7 with very mild disc bulging and

26  mild diffuse facet and uncovertebral arthropathy.  (AR 991.)

27  ///

28  ///

**III.**

**LEGAL STANDARD**

**A.   The Disability Standard**

To qualify for disability insurance benefits under the Social Security Act, a claimant must show she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[2] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five-step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520;[3] Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.

Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.

Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006). The burden of proof is on the claimant at steps one through four. Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020). A

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

[3] The regulations which apply to disability insurance benefits, 20 C.F.R. §§ 404.1501 et seq., and the regulations which apply to SSI benefits, 20 C.F.R. §§ 416.901 et seq., are generally the same for both types of benefits. Accordingly, while Plaintiff seeks only disability insurance benefits in this case, to the extent cases cited herein may reference one or both sets of regulations, the Court notes these cases and regulations are applicable to the instant matter.

claimant establishes a *prima facie* case of qualifying disability once she has carried the burden of proof from step one through step four.

Before making the step four determination, the ALJ first must determine the claimant's RFC.  20 C.F.R. § 416.920(e); Nowden v. Berryhill, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018).  The RFC is "the most [one] can still do despite [her] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1).  The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e); 416.945(a)(2); Social Security Ruling ("SSR") 96-8p, available at 1996 WL 374184 (Jul. 2, 1996).[4]  A determination of RFC is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner.  See 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion); 404.1546(c) (identifying the ALJ as responsible for determining RFC). "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."  Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001).

At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform given her RFC, age, education, and work experience.  20 C.F.R. § 416.912(g); Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006).  To do this, the ALJ can use either the Medical Vocational Guidelines ("grids") or rely upon the testimony of a VE.  See 20 C.F.R. § 404 Subpt. P, App. 2; Lounsburry, 468 F.3d at 1114; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).  "Throughout the five-step evaluation, the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.' "  Ford, 950 F.3d at 1149 (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).

## B.   Standard of Review

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).  In

---

[4] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner.  20 C.F.R. § 402.35(b)(1).  While SSRs do not have the force of law, the Court gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989); see also Avenetti v. Barnhart, 456 F.3d 1122, 1124 (9th Cir. 2006).

determining whether to reverse an ALJ's decision, the Court reviews only those issues raised by the party challenging the decision. See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir. 2001). Further, the Court's review of the Commissioner's decision is a limited one; the Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); Biestek v. Berryhill, 139 S. Ct. 1148, 1153 (2019). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart (Thomas), 278 F.3d 947, 954 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)); see also Dickinson v. Zurko, 527 U.S. 150, 153 (1999) (comparing the substantial-evidence standard to the deferential clearly erroneous standard). "[T]he threshold for such evidentiary sufficiency is not high." Biestek, 139 S. Ct. at 1154. Rather, "[s]ubstantial evidence means more than a scintilla, but less than a preponderance; it is an extremely deferential standard." Thomas v. CalPortland Co. (CalPortland), 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and citations omitted); see also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996). Even if the ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless. Stout, 454 F.3d at 1055–56. Moreover, the burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

Finally, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). Nor may the Court affirm the ALJ on a ground upon which he did not rely; rather, the Court may review only the reasons stated by the ALJ in his decision. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003). Nonetheless, it is not this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment for the ALJ's; rather, if the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Ford, 950 F.3d at 1154 (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).

///

**IV.**

**DISCUSSION AND ANALYSIS**

Plaintiff alleges that the RFC which includes a limitation for frequent overhead reaching is not supported by substantial evidence because the ALJ took it upon him to review a later submitted shoulder x-ray that was not reviewed by any medical provider which established a diagnosis of osteoarthritis.  (Pl.'s Mot. for Summary Judgment ("Mot.") 14, ECF No. 14.)  Plaintiff argues that there is no difference between the ALJ's limitation to frequent overhead reaching and the State agency reconsideration limitation of frequent overhead reaching, which the ALJ supposedly based on objective evidence of a new severe impairment.  Plaintiff asserts that that ALJ's rational that the November 2021 x-ray established a new impairment of shoulder osteoarthritis was not reviewed by the State agency physicians or a consultative examiner and was accounted for by the same limitations opined by the State agency physicians and is not supported by substantial evidence. Plaintiff argues that the ALJ reviewed the raw medical evidence, the MRI or x-ray, indicating a new diagnosis or worsening of the impairment.  (Id. at 15.)

Plaintiff also alleges that she submitted further objective evidence of a newly diagnosed or worsening impairment to the Appeals Council which they did not exhibit because the Appeals Council determined that the evidence does not show a reasonable probability that the evidence would change the outcome of the decision.  Specifically, Plaintiff submitted a January 25, 2022, treatment record documenting a new diagnosis of onychomycosis and degenerative joint disease of the ankle and/or foot which she asserts is likely to change the outcome of the decision in terms of limitations for standing, walking, and using the lower extremities for pushing and pulling.  Plaintiff also contends that there is a January 5, 2022, treatment record that documents her complaints of pain in her ankles and fungal toenails, describing tingling, numbness and burning in her feet with examination findings of diminished sensation, edema, tenderness to the ankle, and decreased range of motion, ankle strength, and reflexes.  Plaintiff was prescribed an orthotic to assist with standing and walking.  Plaintiff seeks for the Court to review this evidence to determine whether the ALJ's decision was supported by substantial evidence.  (Id. at 17.)

Plaintiff argues that the ALJ rejected her symptom complaints regarding her limited ability

1  to stand and walk which was at less than a sedentary level without providing clear and convincing

2  reasons, because the ALJ mischaracterized inconsistent descriptions of standing and walking in one

3  report and her supposedly beneficial response to spinal treatment.  Plaintiff contends that this new

4  diagnosis of onychomycosis and degenerative joint disease is likely to change the outcome of the

5  decision.  (Id. at 18.)

6         Defendant counters that the Court should affirm the ALJ's finding that Plaintiff was capable

7  of light work with additional postural and environmental limitations because the ALJ properly

8  considered the medical and testimonial evidence and the RFC assessment is supported by the

9  record, including the findings of the consultative examiner and the prior administrative findings of

10  Drs. Acinas and Bobba.  (Def.'s Cross-Motion for Summary Judgment, ("Cross-Motion") 2-3, ECF

11  No. 18.)  Defendant contends that Plaintiff implies that a proper evaluation of the right shoulder

12  condition would have resulted in further limitations and ultimately a finding of disability, but the

13  ALJ found Plaintiff's shoulder condition to be severe.  Defendant argues that the ALJ properly

14  discussed how Plaintiff's right shoulder condition affected her functioning, that it bothered her at

15  times, but the ALJ also noted that Plaintiff described her right shoulder as doing well which is

16  consistent with the fact that Plaintiff did not receive any treatment for her right shoulder.  Defendant

17  contends that the ALJ reasonably concluded that Plaintiff's right shoulder impairment, in

18  combination with her other impairments, did not preclude her from performing light work with

19  additional limitations.  (Id. at 3.)

20         Defendant argues that Plaintiff has not shown that the right shoulder arthritis resulted in

21  limitations beyond those in the RFC findings, let alone that it would have changed the finding of

22  nondisability.  Defendant contends that Plaintiff inaccurately states that the ALJ said he was

23  providing for additional limitations based on review of a shoulder x-ray, but the ALJ did not state

24  any additional limitations were added due to review of the x-ray.  Rather, the ALJ accurately

25  observed that the reason for the x-ray was shoulder pain and that the RFC included limitations to

26  address this symptom.  Defendant argues that no medical opinion suggested that Plaintiff was more

27  limited than as stated in the RFC and Plaintiff has not challenged the analysis of the medical

28  evidence.  (Id.)

Defendant states that the Court should reject Plaintiff's argument that the ALJ impermissibly reviewed raw medical evidence and the regulations specifically direct the ALJ to make findings as to what the evidence shows.  Defendant contends that it was entirely proper for the ALJ to evaluate the medical evidence and make findings about what it showed when assessing Plaintiff's RFC.  (Id. at 4.)

Defendant also asserts that the Appeals Council reviewed that additional medical evidence submitted after the ALJ issued the decision and it appears in the record.  Defendant states that the Court must consider these additional records.  However, Plaintiff has not shown that the records submitted to the Appeals Council warrant remand.  Defendant asserts that Plaintiff highlights two records from January 2022, arguing that this evidence shows a new diagnosis of degenerative joint disease of the ankle and/or foot, however, the ALJ considered that Plaintiff had multiple joint problems including degenerative joint disease.  While Plaintiff argues that this diagnosis is likely to change the outcome of the decision by resulting in further limitations in her ability to stand and walk, Defendant asserts this is not accurate.  Defendant argues that the ALJ specifically and thoroughly considered Plaintiff's ability to stand and walk regardless of which impairments led to those functional limitations.  In example, the ALJ considered that Plaintiff was able to walk one mile, had a normal gait, and normal strength.  (Id. at 5.)

Defendant argues that the records provided to the Appeals Council do not deprive the ALJ's decision of substantial evidence.  Defendant asserts that even with this evidence, the ALJ's decision still has more than a scintilla of support and the Court should not remand for consideration of this evidence.  (Id. at 6.)

### A.      Legal Standard

The RFC is "the most [one] can still do despite [her] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1). "The ALJ must consider a claimant's physical and mental abilities, § 416.920(b) and (c), as well as the total limiting effects caused by medically determinable impairments and the claimant's subjective experiences of pain, § 416.920(e)."  Garrison v. Colvin, 759 F.3d 995, 1011 (9th Cir. 2014).  A determination of RFC is not a medical opinion, but a legal decision that is expressly

1    reserved for the Commissioner.  See 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion);

2    404.1546(c) (identifying the ALJ as responsible for determining RFC). "[I]t is the responsibility

3    of the ALJ, not the claimant's physician, to determine residual functional capacity."  Vertigan,

4    260 F.3d at 1049.

5        At step four the RFC is used to determine if a claimant can do past relevant work and at

6    step five to determine if a claimant can adjust to other work.  Garrison, 759 F.3d at 1011.  "In

7    order for the testimony of a VE to be considered reliable, the hypothetical posed must include 'all

8    of the claimant's functional limitations, both physical and mental' supported by the record."

9    Thomas, 278 F.3d at 956.

10       **B.  Analysis**

11           1.   Whether the ALJ erred in considering the November 2021 x-ray

12       The Court first considers Plaintiff's argument that the ALJ erred by considering the

13   November 2021 x-ray.  As relevant here, the ALJ found that Plaintiff had a severe impairment of

14   right shoulder problems (mild acromioclavicular joint arthritis) with pain and weakness.  (AR 32.)

15   The ALJ considered that in her function report Plaintiff alleged she had trembling of her legs and

16   hands, problems with reaching due to her back, neck, and shoulder symptoms, and some stiffness

17   with sitting.  (AR 35, 454.)   The ALJ also considered that at the hearing, Plaintiff described

18   symptoms of arm pain and shaking in her upper extremities, and symptoms of right shoulder

19   arthritis that bothered her at times and explained that she had undergone surgery on the shoulder in

20   the past.  (AR 35, 275-76.)  Plaintiff testified that she could lift 10 pounds at the most, but 5 pounds

21   was more comfortable.  (AR 35, 280.)  The ALJ considered that Plaintiff reported a history of right

22   shoulder surgery dating from 2006 (AR 38, 657), but at the August 2021 consultative examination,

23   she reported that her shoulder was doing very well.  (AR 38, 771.)  Further, the ALJ noted that the

24   record did not show any specific treatment for her shoulder condition, consistent with this assertion.

25   (AR 39.)  However, the ALJ did note that imaging from late 2021 noted early acromioclavicular

26   joint osteoarthritis.  (AR 39, 973.)  The ALJ found that indication was that Plaintiff was having

27   shoulder pain, which was supportive of some symptom-related limitations from this condition.

28   Therefore, light exertional limitations and overhead reaching limitations reflect Plaintiff's symptom

1  related limitations for the right shoulder.  (AR 39.)

2      Initially, Plaintiff alleges that the ALJ was supposedly basing the RFC on a new severe

3  impairment of shoulder osteoarthritis.  However, while there is a new diagnosis based on the

4  November 6, 2021, imaging which showed no acute osseous findings and early acromioclavicular

5  joint osteoarthritis (AR 973), Plaintiff's shoulder pain was not a new impairment.  Rather, the record

6  reflects that Plaintiff occasionally complained of shoulder pain throughout the record, including as

7  early as October 2019.  (AR 454, 590, 598, 615, 851, 856, 910.)  Review of the record shows there

8  were limited to no shoulder findings on examination.  (AR 508, 599, 617, 852-53, 857-58, 911.)

9  The ALJ also considered that Plaintiff told Dr. Wagner in August 2021 that her shoulder was doing

10  very well.  (AR 38, 771.)    The ALJ found that the record did show any specific treatment for

11  Plaintiff's shoulder condition which was consistent with her statement that her shoulder was doing

12  well.  (AR 39.)  A review of the record shows that substantial evidence supports these findings.

13      The ALJ considered that the November 6, 2021, x-ray of her right shoulder was an

14  indication that she was having some shoulder pain which supported limitations for this condition.

15  (AR 39.)  Therefore, he found that the light exertional limitations and frequent overhead lifting

16  limitations accommodated her right shoulder symptoms.  (AR 39.)

17      The Court finds Plaintiff's reliance on Fox v. Comm'r of Soc. Sec., No. 1:19-CV-00146-

18  LJO-SAB, 2019 WL 6724355 (E.D. Cal. Dec. 11, 2019), report and recommendation adopted, No.

19  1:19-CV-00146-LJO-SAB, 2020 WL 469363 (E.D. Cal. Jan. 29, 2020), to be misplaced.[5]  In Fox,

20  the ALJ considered a CT scan which showed advanced disc degenerations and the claimant's

21  physician "opined that the CT scan showed multilevel moderate to severe spondylosis with

22  moderate degenerative disc disease at T12-L1, L1-2, and L2-3, as well as severe degenerative disc

23  disease at L5-S1 with foraminal stenosis bilaterally greater on the right than on the left."  2019 WL

24  6724355, at *14.  The claimant subsequently had an MRI that showed "(1) degenerative changes

25

26  [5] The Court has previously admonished counsel for improperly using extensive footnotes which contain legal
argument, legal citations, and evidence in support of the claimant's motion.  See Rummerfield v. Comm. Of Soc.

27  Sec., 1:22-cv-01571-SAB (E.D. Cal. Mar. 14, 2024).  Again, in this case, counsel has included legal citation and
argument in footnotes.  The Court declines to address the cases cited in the footnotes.  Afterall, should the Court

28  reciprocate in this practice by supplying its legal citations in a footnote in smaller type set as authority for its legal
analysis, then the parties would be overly burdened.  The Court declines to reciprocate.

most marked at L5-S1, with a mild canal, and severe right and moderate to severe left-sided foraminal stenosis; (2) mild canal stenosis and mild to moderate bilateral foraminal stenosis at T12-L1, L1-2, L2-3, and L4-5; and (3) mild canal stenosis with no compression upon the underlying thoracic spinal cord at T10-11 and T11-12." Id.  The Court found,

> The ALJ only passingly refers to the objective medical imaging results in her opinion.  In reviewing the March 8, 2016 CT scan, the ALJ acknowledged it showed disc degeneration, however did not restate that it showed "advanced" disc degeneration.  (AR 20-21.)  In her review of the June 2016 MRI, the ALJ acknowledged that it showed mild to moderate degenerative disc disease and mild to severe stenosis, but the ALJ's only explanation of this record is that it showed no compression of the underlying spinal cord.  (AR 21.)  The ALJ did not explain the impact of the 2016 MRI results showing mild to severe stenosis despite Dr. Wahba's explicit recommendation to obtain an MRI to determine the presence of stenosis. (AR 21, 478.)
>
> The ALJ stated that "[o]f great significance, there is no medical opinion consistent with the claimant's allegation of disability or which supports any greater restrictions than those determined herein."  (AR 21.)  The ALJ then gave partial weight to the non-examining state agency sources "in light of a lack of treating or examining source functional assessment [AR 68-77], but then gave "great weight to their assessment, except with regard to the exertional level, which is reduced from medium to light to better account for the claimant's pain and other subjective symptoms."  (AR 21.)

Id. at * 15.  The Court found it was unable to determine how the ALJ arrived at the conclusion that the claimant was capable of light work.  Id.

In Hoskins v. Comm'r of Soc. Sec., No. 1:17-CV-01520-LJO-SAB, 2019 WL 423128, at *14 (E.D. Cal. Feb. 4, 2019), report and recommendation adopted, No. 1:17-CV-01520-LJO-SAB, 2019 WL 1004573 (E.D. Cal. Feb. 28, 2019), the Court found error where the ALJ rejected more restrictive limitations opined by the claimant's treating physician and interpreted two MRI's and examination findings indicating new limited range of motion testing and greater limitations after the agency physicians reviewed the record.  Similarly, in Daniel Garcia v. Comm'r of Soc. Sec., No. 1:18-CV-00914-SAB, 2019 WL 3283171, at *7 (E.D. Cal. July 22, 2019), the ALJ was found to have erred by rejecting a more restrictive opinion issued by the claimant's physician and giving greater weight to the agency physicians who did not review the later records which were available to the treating physician who opined more restrictive limitations.  In Samoy v. Saul, No. 2:18-CV-538-EFB, 2019 WL 4688638, at *4 (E.D. Cal. Sept. 26, 2019), the ALJ was found to have erred where he inaccurately stated that the allegations regarding the claimant's severe shoulder pain was

not supported by the medical evidence where the record demonstrated tenderness, a reduced range of motion, imaging showing a marked deformity of the shoulder and these results were not reviewed by the agency physicians.

However, in this instance, the ALJ did not interpret evidence of a new or worsening impairment that had not been considered by the consultative physicians. Rather, the ALJ noted that the imaging showed early acromioclavicular joint osteoarthritis which supported that Plaintiff was having some shoulder pain. But the ALJ also considered the lack of treatment for Plaintiff's shoulder despite occasional complaints of shoulder pain in the record, and her statements at the consultative examination that her shoulder was doing well to reasonably determine that the frequent limitation to overhead reaching addressed her shoulder pain. Additionally, the ALJ considered the prior administrative medical findings and opinion evidence in the record. (AR 39-40.)

At initial determination, Dr. Acinas found that Plaintiff had severe musculoskeletal impairments and a severe obesity impairment and assessed limitations for light exertion with additional limitations for frequent climbing of ramps/stairs/ladders/ropes/scaffolds, frequent balancing, frequent postural activities, and frequent handling and fingering with the left upper extremity. (AR 39, 302-04.) The ALJ found this opinion to be largely persuasive as it was supported by findings of abnormal spinal imaging and a positive Tinel's sign on the right that support limitations but also considered normal motor findings and normal range of motion of the back and neck that indicate a continuing capacity for a broad range of exertion. The ALJ found the opinion to also be consistent with the conservative nature of Plaintiff's spinal treatment and her beneficial response to treatment. (AR 39.)

The ALJ also considered that on reconsideration, Dr. Bobba generally agreed with the limitations but added additional limitations for frequent overhead reaching bilaterally. (AR 39, 321-23.) The ALJ found this opinion to also be largely persuasive as the consultant noted the absence of focal neurologic deficits and cited improvement with radiofrequency ablations and injections. (AR 40.) The ALJ found this opinion to be consistent with Plaintiff's treatment and her good response to interventional treatments such as ablations and injections. (AR 40.) However, the ALJ afforded greater consideration to Plaintiff's allegations and her hand and shoulder

dysfunction by including more restrictive limitations that were consistent with the record as a whole.  (AR 40.)

The ALJ also considered the consultative examination of Dr. Wagner in which he opined that Plaintiff was capable of medium work.  (AR 40, 770-74.)  He found the limitations were supported by the mostly normal joint function, normal strength in the extremities and grip, good dexterity of the hands, and generally normal range of motion in the lumbar spine.  The ALJ found this opinion to be most persuasive but included greater limitations in the RFC in consideration of Plaintiff's description of her symptoms and other evidence not available to Dr. Wagner.  (AR 40.)

Plaintiff presented no evidence that she was more limited than opined by the physicians in the record, and the Court finds that substantial evidence supports the ALJ's RFC finding regarding Plaintiff's shoulder limitations.

> 2.    Whether the January 2022 records related to Plaintiff's foot and ankle require remand

The Court next considers Plaintiff's argument that she submitted records of a new foot impairment to the Appeals Council which shows a reasonably probability that the outcome of the decision would be changed.[6]  Plaintiff cites to a January 25, 2022, treatment record that documents a new diagnosis of onychomycosis and degenerative joint disease of the ankle and/or foot.

On January 5, 2022, Plaintiff was seen by Dr. Matouk for a diabetic foot examination and complained of pain in her ankles and fungal nails.  She reported tingling, numbness, and burning in her feet and that she often twists her ankles and feels they are weak.  As relevant here, Plaintiff was found to have a normal gait, no limp, and was ambulating without assistance.  (AR 165.)  Examination notes:

> Ankles and Feet Inspection Right: no erythema, warmth, or deformity and hindfoot valgus.  Inspection Left: no erythema, warmth, or deformity and hindfoot valgus.  Bony Palpation of the Ankle/Foot Right: no tenderness of the sesamoids or the Achilles tendon insertion and tenderness of the lateral ankle.  Bony Palpation of the Ankle/Foot Left: no tenderness of the sesamoids or the Achilles tendon Insertion and tenderness of the lateral ankle.  Soft Tissue Palpation of the Ankle/Foot Right: no tenderness of the tibialis posterior, the plantar fascia, the Achilles tendon, or the peroneus longus and brevis and tenderness of the anterior talofibular ligament.  Soft

---

[6] Plaintiff specifically asserts that she is not asking the Court to find that the Appeals Council made an erroneous evidentiary finding.  Rather she is requesting the Court to review the evidence in light of the entire decision to determine whether the ALJ's decision was supported by substantial evidence.  (Mot. at 17.)

Tissue Palpation of the Ankle/Foot Left: no tenderness of the tibialis posterior, the plantar fascia, the Achilles tendon, or the peroneus longus and brevis and tenderness of the anterior talofibular ligament.  Active Range of Motion Right: Decreased ROM to pedal joints.  Active Range of Motion Left: Decreased ROM to pedal Joints. Stability Right: anterior drawer negative.  Stability Left: anterior drawer negative. Strength Right: Muscle strength to DF and PF 5/5, 4/5 for Inversion and Eversion. Strength Left: Muscle strength to DF and PF 5/5, 4/5 for Inversion and Eversion. Inspection of the Toes Right: second toe hammer, third toe hammer, fourth toe hammer, and fifth toe hammer and no callus.  Inspection of the Toes Left: second toe hammer, third toe hammer, fourth toe hammer, and fifth toe hammer and no callus.  Palpation and Stability of the Toes Right: no tenderness of the great toe, the second toe, the third toe, the fourth toe, or the fifth toe.  Palpation and Stability of the Toes Left: no tenderness of the great toe, the second toe, the third toe. the fourth toe, or the fifth toe.

Neurological System: Ankle Reflex Right: diminished (1). Ankle Reflex Left: diminished (1). Sensation on the Right: tactile decrease distal extremities.  Sensation on the Left: tactile decrease distal extremities.  Special Tests on the Right: Hoffa's test negative, Tinel's test negative, and squeeze test negative.  Special Tests on the Left: Hoffa's test negative, Tinel's test negative, and squeeze test negative.

Skin: Right Lower Extremity: thin and varied pigmentation; Nails 1-5, are elongated, thickened, mycotic with subungual debri.  Left Lower Extremity: thin and varied pigmentation; Nails 1-5, are elongated, thickened, mycotic with subungual debri.

(AR 165.) Dr. Matouk noted that she discussed diabetic footcare and hygiene with Plaintiff in great detail and the etiology of fungal infections was explained to Plaintiff.  Plaintiff was diagnosed with onychomycosis and was prescribed ciclopirox to be applied topically once a day; degenerative joint disease of the ankle and/or foot and Plaintiff was prescribed an orthotic; and ankle instability bilateral.  (AR 165-66.)

On January 25, 2022, Plaintiff returned for MRI results.   No physical examination is recorded.  (AR 160.)

On February 15, 2022, Plaintiff received her orthotics and denied any new foot concerns.  No examination is recorded.  (AR 158.)

On April 28, 2022, Plaintiff had a telephone appointment for medication refill and reported she was doing well with no side effects.  No physical examination was performed.  (AR 155.)

On June 9, 2022, Plaintiff was seen for a medication refill and no physical examination is recorded.  (AR 146.)

On July 20, 2022, Plaintiff had a telephonic appointment regarding showering and requested referral for a breast reduction.  No physical examination is noted.  (AR 142.)

On August 8, 2022, Plaintiff had a telephonic appointment for medication refill and reported doing well with no concerns.  (AR 139.)  No physical examination was recorded.  (AR 140.)

On October 18, 2022, Plaintiff was seen for an orthopedic referral and requesting a new glucometer but had no other complaints.  No physical examination is recorded.  (AR 137.)

On November 9, 2022, Plaintiff was seen for a referral to orthopedics.  No physical examination was recorded.  (AR 134.)

While Plaintiff argues that this new evidence should be considered to find that the RFC is not supported by substantial evidence, the medical record relied on by Plaintiff is dated January 5, 2022, and there are no further records to indicate that Plaintiff continued to have foot or ankle pain after being prescribed her orthotics.  Further, Plaintiff never asserted at the October 31, 2022, hearing or anywhere else in the record that she was unable to work due to foot or ankle problems.  Nor did Plaintiff raise the issue that she was unable to work due to foot or ankle problems before the Appeal's Council.  Finally, a review of the entire record does not indicate any other complaints regarding foot or ankle pain.  The Court finds no evidence in the record to support Plaintiff's assertion that the diagnosis of onychomycosis and degenerative joint disease of the ankle or foot would have lead to greater restrictions in her residual functional capacity and changed the outcome of the decision.

The ALJ considered Plaintiff's testimony that she was unable to work due to disabling back and musculoskeletal pain and found that her testimony regarding her ability to walk and sit were inconsistent, and Plaintiff's allegation that she needed a cane to walk in the function report was inconsistent with the medical record which showed no use of an assistive device.  (AR 36-37.)  The ALJ also considered that neurologic findings on examination were also inconsistent with her testimony as strength and motor function were usually intact.  (AR 37.)

For the reasons discussed above, the Court finds that substantial evidence in the record supports that ALJ's RFC findings.

## V.

## CONCLUSION AND ORDER

In conclusion, the Court denies Plaintiff's Social Security appeal and finds no harmful error

warranting remand of this action.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's motion for summary judgment is DENIED; and Defendant's cross-motion for summary judgment is GRANTED.  IT IS FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Diana Lynn Nichols.  The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:   **August 23, 2024**

UNITED STATES MAGISTRATE JUDGE